AUSA:   William J. Vailliencourt Jr.   Telephone: (313) 920-3193

AO 106 (Rev. 04/10)  Application for a Search Warrant | Task Force Officer:   Evan Zapolski | Telephone: (989) 439-5276

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)   Case No.  21-cr-50658-2
218 Storch Street, Saginaw, MI 48602. )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See ATTACHMENT A.

located in the _____ Eastern _____ District of _____ Michigan _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2251, 2252, and/or 2252A | Child pornography |

The application is based on these facts:

See attached AFFIDAVIT.

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Evan Zapolski, Task Force Officer-FBI
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date:   May 10, 2021
_____
*Judge's signature*

City and state:  Flint, Michigan

Curtis Ivy, Jr.,  U. S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT AT
218 STORCH STREET, SAGINAW, MI 48602**

I, Evan Zapolski, a Detective Trooper with the Michigan State Police, and a

Task Force Officer with the Federal Bureau of Investigation, being duly sworn,

hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am employed as a Detective Trooper (D/Tpr) with the Michigan State

Police, and a Task Force Officer (TFO) with the Federal Bureau of

Investigation (FBI), and have been so employed since May 2013. I have been

assigned to the Michigan State Police Internet Crimes against Children

Taskforce since February 2017, and have been a Task Force Officer with the

FBI's Crimes against Children Taskforce since March 2019. I have received

training in the area of child pornography and child exploitation and have

observed and reviewed numerous examples of child pornography (as defined in

18 U.S.C. § 2256) in all forms of media including computer media. I have been

involved with several investigations regarding child pornography and the

exploitation of children through the internet.

## STATUTORY AUTHORITY

2. This investigation concerns alleged violations of 18 U.S.C. §§ 2251,

2252, and 2252A, relating to material involving the sexual exploitation of

1

minors.   The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.   Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.   I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence and instrumentalities of violations of 18 U.S.C. §§ 2251, 2252, and 2252A described in Attachment B are presently located at 218 Storch Street, Saginaw, Saginaw County, Michigan 48602, in the Eastern District of Michigan (the "Target Residence"). The Target Residence is described as a one-story house with beige siding, gray shingles, and white window trim.   The Target Residence has a detached garage that is on the south side of the residence.   The front storm door and garage door are white in color.   There are porch columns that have a stone base.   The numbers "218" are displayed on the stone base for the porch column nearest the driveway.   The house sits on the south side of Storch Street.   The Target Residence is the second house to the south of Adams Boulevard.   It is also described in Attachment A and pictured in Attachment A as well.

**BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY**

3. Based on my knowledge, training, and experience in child exploitation

and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology, and the Internet have revolutionized the manner in which child pornography is produced and distributed.

4. Computers basically serve five functions in connection with child pornography:  production, communication, distribution, storage and social networking.

5. Child pornographers can transpose photographic images from a camera into a computer-readable format with a scanner.  With digital cameras, the images can be transferred directly onto a computer.  A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Through the Internet, electronic contact can be made to literally millions of computers around the world.

6. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.  These drives can store thousands of images at very high resolution.

7. The Internet affords collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively

3

secure and anonymous fashion.

8. Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Google, Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

9. As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. A forensic examiner often

can recover evidence that shows whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded.  Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet.  Electronic files downloaded to a hard drive can be stored for years at little or no cost.  Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools.  When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache."  The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.  Thus, the ability to retrieve residue of an

electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

## BACKGROUND OF INVESTIGATION AND PROBABLE CAUSE

10. On April 20, 2021, Michigan Department of Corrections (MDOC) Agent Jon Brown contacted MDOC parolee Joshua Wazny, hereinafter referred to as Wazny, at his residence, 218 Storch St, Saginaw, MI 48602. Brown advised that although MDOC believes that Wazny's brother may also reside there, there were no other persons present at the residence.

11. Wazny is on the Michigan Sex Offender Registry for a 2016 conviction of Criminal Sexual Conduct – Second Degree (Person Under 13). Because of this conviction, Wazny is on parole through MDOC.

12. As part of his parole, Wazny is subject to search under MDOC condition 4.2 which states:

a. Written Consent to Search the Parolee's person and/or property, MCL 791.236(1): I voluntarily consent to a search of my person and property upon demand by a peace officer or parole officer. If I do not sign this written consent, I understand that my parole may be rescinded or revoked.

13. On April 20, 2021, Agent Brown seized an HP laptop, model: Pavillion ZE4800 from the residence and an LG cellular phone model: L322DL containing a removeable 16 GB micro SD card from Wazny's person.

14. While on scene, Agent Brown asked Wazny if there would be anything on his cell phone that would violate his parole. Wazny said "there may be some child porn."

15. On April 26, 2021, Agent Brown and MSP Digital Forensic Analyst (DFA) Pitt began the analysis of the HP laptop Pavillion ZE4800. Agent Brown and DFA Pitt removed the Hitachi hard drive from the laptop and created a forensic image file. A forensic image is an exact copy of digital media. An analysis was not completed of the image file or the hard drive.

16. On April 27, 2021, MSP Detective Sergeant (D/Sgt.) David Vergison utilized forensic tools to complete a full data extraction from the LG cell phone model: L322DL. On April 28, 2021, Agent Brown began reviewing the data extraction. Agent Brown found child pornography files and stopped his examination pending a search warrant. Agent Brown described three images that he located and they are described as follows:

a. Filename: imgcache0_embedded_1341.jpg

       i. This image is of a nude white female child approximately 8-10 years of age with her legs exposing her vaginal area.  The focus of the image is of the exposed vaginal area.

    b. Filename: imgcache0_embedded_1356.jpg

       i. This image contains 2 smaller images with the top image being a toddler 1-3 years old lying on her back naked from the waist down and legs upright. The toddlers vaginal area is exposed with an adult person's hand spreading the vagina open with the toddlers hand on top of the adult hand.  The bottom image depicts what looks like 2 female toddlers age 2-5 years old. Both toddlers are naked. The toddler on the right has an open mouth on the toddler of the lefts exposed vaginal area.

    c. Filename: imgcache0_emdedded_1347.jpg

       i. This image is of a white female child approximately 8-10 years of age nude from the waist down lying on her back with her legs upright exposing her vaginal area.  The focus of the image is of the exposed vaginal area.

17. Prior to the data extraction of the cell phone, a removeable 16 GB micro SD card was removed from the LG cell phone.  The SD card was not analyzed until a search warrant authorizing it was obtained.

18. On April 28, 2021, D/Tpr. Bledsoe and I interviewed Wazny at the Saginaw County Jail.  Wazny waived his Miranda Rights prior to questioning. Wazny admitted to using his cell phone to obtain child pornography and saving child pornography to the SD card.  Wazny also admitted to using the HP laptop to view child pornography.

19. On May 6, 2021, a search warrant was authorized to continue to the analysis of the LG cell phone, to extract the data from the 16 GB micro SD card, and to analyze the image file of the Hitachi hard drive from the HP laptop.

20. Pursuant to that search warrant, on May 7, 2021, I located 6 files of child pornography on the LG cell phone.  I located the same 6 files on the 16 GB micro SD card.  I located the 3 original images found by Agent Brown and three additional images.  Of the images located, 5 images on the micro SD card were within a folder titled, "transfur."  I know from training and experience that micro SD cards are easily removeable from Android mobile devices. Micro SD cards are a quick and easy method of transfer images and videos between cell phones, tablets, and computers.

21. During the interview on April 28, 2021, Wazny admitted to using Kik to trade in child pornography and that he had downloaded the Kik application. Kik is a mobile messaging application in which users can trade

images and videos with individual users and groups of users. The Kik application was not located on the LG cell phone.  Also during the interview, Wazny provided his mother's telephone number as (989)522-0436. Wazny specifically denied that there were any other devices at his residence and indicated there would be less than 100 images on the SD card.

22. On May 7, 2021, I began listening to the calls Wazny placed while in the Saginaw County Jail.  Prior to the start of each call, the automated service informs the caller that the call may be monitored or recorded.  On April 22, 2021, Wazny called (989)522-0436 at 7:15 PM.  I reviewed the LG phone extraction and this phone number is saved as "Angela Wazny (Mom)" in the contacts.  In this jail call, Wazny told his mother, Angela, to look in his basement for a "wad" of towels.  He instructed her not to unwrap the towels. He instructed her to put the towels in a bag and to place the bag in his room. Later in the call, Angela asked Wazny, "what about your other phone?" Wazny responded, "I don't know what you're talking about, that's the one they have."

23. According to the Michigan Secretary of State, Joshua Wazny is the only listed resident of 218 Storch Street, Saginaw, Michigan.  According to Agent Brown, Wazny's parole officer, Wazny reports to MDOC that he resides at that address.

24. I believe that there is probable cause that there are additional electronic devices at the Target Residence and that those devices likely contain child pornography, because collectors of child pornography will often use multiple devices and mediums to store and view child pornography.

25. I am aware that many computers and electronic storage devices today, such as laptop computers, tablets, telephones, external drives and thumb drives, are portable.   I also know from my training and experience that these devices are often stored in vehicles to prevent other users in the home from discovering the existence of the child pornography collection.  According to the Michigan Secretary of State, Wazny has a 2011 Buick Regal (no reg plate, VIN: 2G4GW5EV6B9165344) registered in his name. While there were no vehicles observed on May 7, 2021 during surveillance, the garage door was closed. Therefore, this application seeks permission to search vehicles located at or near the premises that fall under the dominion and control of the person or persons associated with said premises.  The search of these vehicles is to include all internal and external compartments and all containers that may be associated with the storage of child pornographic materials or their instrumentalities contained within the aforementioned vehicles.

26. I know based on my training, knowledge and experience, that individuals engaged in illegal possession, receipt and distribution of child

pornography frequently maintain secured locations which they believe are safe from detection by law enforcement agencies.  These locations can range from "safe houses", to locked rooms in a residence, locked storage cabinets, or safety deposit boxes, to name a few. I know that individuals engaged crimes against children will go to great lengths to conceal and protect materials associated with their illegal activity such as travel records, gift receipts, and documents reflecting names, addresses, and/or other identifying information such as email addresses, and cellular phone numbers, as well as photographs of victims and other images used to groom and entice minors to engage in sexually explicit activity about their illegal activities.  This type of material is frequently stored in a place which they perceive to be safe from seizure by law enforcement agencies.  I know that collectors of child pornography often keep their collection of images under lock and key in secure places such as cabinets, drawers, or safes.

## CHILD PORNOGRAPY COLLECTOR CHARACTERISTICS

27. Based upon my knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

a. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.  Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica[1], and videotapes for many years.

d. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private

---

[1]  "Child erotica," as used in this affidavit, is defined as materials or items that are sexually arousing to certain individuals but which are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions.  Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

environment.  These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

e. Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. Collectors of child pornography prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

28. Based on this investigation, Joshua Wazny was in possession of child pornography on April 20, 2021 during a probation search.  During a jail called placed by Wazny, his mother asked him about his "other phone."  During the MDOC search, only one cell phone was seized.  During an interview, Wazny admitted to using the mobile application Kik to trade child pornography however, Kik data was not located on his current cell phone.  Wazny further specifically denied that there were any other devices located at the residence.

14

Based on these facts and those set forth in the Background of the Investigation it is believed that Wazny demonstrates the characteristics of a collector of child pornography and that there is probable cause that he may have additional devices at his residence.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

29. Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of millions of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b. Searching computer systems for criminal evidence is a highly

technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data.  The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

30. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU).  In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues.  In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

31. Furthermore, because there is probable cause to believe that the

computer and its storage devices are all instrumentalities of crimes, within the

meaning of 18 U.S.C. §§ 2251 through 2256, they should all be seized as such.

## CONCLUSION

32. Based on this information, I respectfully submit that there is

probable cause to believe that evidence of violations of Title 18, United States

Code, Sections 2251, 2252, and 2252A will be located at the Target Residence

described in Attachment A.

33. Wherefore by this affidavit and application, I request that the Court

issue a search warrant that would allow agents to search for and seize evidence

from the Target Residence as further described in Attachment B.

_____

Evan Zapolski
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me and/or by electronic
means on May 10, 2021.

_____

Curtis Ivy, Jr.
United States Magistrate Judge

17

**ATTACHMENT A**
**DESCRIPTION OF THE PREMISES TO BE SEARCHED**
**218 STORCH STREET, SAGINAW, MI 48602 (the "Target Residence")**

The Target Residence is described as a one-story house with beige siding, gray shingles, and white window trim and includes a detached garage that is on the south side of the residence. The front storm door and garage door are white in color. There are porch columns that have a stone base. The numbers "218" are displayed on the stone base for the porch column nearest the driveway. The house sits on the south side of Storch Street. The Target Residence is the second house to the south of Adams Boulevard and is pictured below.



## ATTACHMENT B
## LIST OF ITEMS TO BE SEIZED AND SEARCHED
## 218 STORCH STREET, SAGINAW, MI 48602

1.      All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any mechanism used for the receipt or storage of the same, including but not limited to:

      a.      any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, computer disks, disk drives, video display monitors, printers, modems, routers, tape drives, system disks, magnetic disks, internal/external hard drives, scanners, and other computer related operation equipment; any electronic and/or digital data storage devices, including but not limited to, hardware, software, diskettes, tapes, DVD's, CD's, flash memory devices, cellular telephones, tablets, and other storage mediums;

      b.      books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256;

      c.      originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256; and

      d.      motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256;

2.      Information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

1

      a.     envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256; and,

      b.     books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256;

3.    Any and all cellular telephone and the content of the any cellular phone including but not limited to contact names, addresses and telephone numbers, text messages, emails, calendars, notes, photographs, and any items demonstrating ownership of the cellular telephone;

4.    For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant, evidence of who used, owned, or controlled the computer or storage medium at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

5.    In order to search for the items described above that may be maintained in electronic media, law enforcement personnel seek authorization to search, copy image and seize the following items for off-site review:

      a.     Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense listed above;

b.     Any computer equipment used to facilitate the trans1nission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

c.     Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD's, DVD's, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

d.     Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software;

e.     Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

f.     Any physical keys, encryption devices, dongles, and similar physical items necessary to gain access to the computer equipment, storage devices or data;

g.     Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data;

h.     Files, records, programs, logs, electronic communications, scanning programs, financial records, hacking software, and router configuration software.

6.     Any and all cameras, film, or other photographic equipment;

7.     Records, in whatever form, of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes, books, diaries, reference materials, and documents regarding purchase or repair;

8.     Records, in whatever form, pertaining to accounts held with Internet Service Providers or of Internet use; and

9.     Deeds, titles, bills, invoices, and other indicators of ownership or occupancy of desktop computers, laptop computers, tablets, and other similar devices; documents reflecting names, addresses, and telephone numbers; bank records; all records or documents identifying the location of safety deposit boxes or other possible repositories for pornography; and any keys or other access devices associated with such depositories;

10.     If any safes or other locked containers are found on the premises, locksmiths may be used to open the safe or container either on the premises, or if reasonably necessary, any safe container may be moved off-premises to be opened.

AUSA:    William J. Vailliencourt Jr.    Telephone:  (313) 920-3193

Task Force Officer:    Evan Zapolski              Telephone:  (989) 439-5276

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the
### Eastern District of Michigan

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | )   Case No.  21-cr-50658-2 |
| 218 Storch Street, Saginaw, MI 48602. | ) |
| | ) |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

       An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

       I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

       **YOU ARE COMMANDED** to execute this warrant on or before    May 24, 2021 _____    *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

       Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

       The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  the presiding United States Magistrate Judge on duty  .
                                                          *(United States Magistrate Judge)*

       ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
       ☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    May 10, 2021    2:03 pm _____      _____
                                                                    *Judge's signature*

City and state:    Flint, Michigan _____      Curtis Ivy, Jr.,  U. S. Magistrate Judge
                                                                         *Printed name and title*

**ATTACHMENT A**
**DESCRIPTION OF THE PREMISES TO BE SEARCHED**
**218 STORCH STREET, SAGINAW, MI 48602 (the "Target Residence")**

The Target Residence is described as a one-story house with beige siding, gray shingles, and white window trim and includes a detached garage that is on the south side of the residence.  The front storm door and garage door are white in color.  There are porch columns that have a stone base.  The numbers "218" are displayed on the stone base for the porch column nearest the driveway.  The house sits on the south side of Storch Street.  The Target Residence is the second house to the south of Adams Boulevard and is pictured below.



## ATTACHMENT B
## LIST OF ITEMS TO BE SEIZED AND SEARCHED
### 218 STORCH STREET, SAGINAW, MI 48602

1. All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any mechanism used for the receipt or storage of the same, including but not limited to:

    a. any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, computer disks, disk drives, video display monitors, printers, modems, routers, tape drives, system disks, magnetic disks, internal/external hard drives, scanners, and other computer related operation equipment; any electronic and/or digital data storage devices, including but not limited to, hardware, software, diskettes, tapes, DVD's, CD's, flash memory devices, cellular telephones, tablets, and other storage mediums;

    b. books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256;

    c. originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256; and

    d. motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256;

2. Information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

1

      a.     envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256; and,

      b.     books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256;

3.    Any and all cellular telephone and the content of the any cellular phone including but not limited to contact names, addresses and telephone numbers, text messages, emails, calendars, notes, photographs, and any items demonstrating ownership of the cellular telephone;

4.    For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant, evidence of who used, owned, or controlled the computer or storage medium at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

5.    In order to search for the items described above that may be maintained in electronic media, law enforcement personnel seek authorization to search, copy image and seize the following items for off-site review:

      a.     Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense listed above;

b.      Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

c.      Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD's, DVD's, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

d.      Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software;

e.      Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

f.      Any physical keys, encryption devices, dongles, and similar physical items necessary to gain access to the computer equipment, storage devices or data;

g.      Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data;

h.      Files, records, programs, logs, electronic communications, scanning programs, financial records, hacking software, and router configuration software.

6.      Any and all cameras, film, or other photographic equipment;

7.      Records, in whatever form, of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes, books, diaries, reference materials, and documents regarding purchase or repair;

3

8.     Records, in whatever form, pertaining to accounts held with Internet Service Providers or of Internet use; and

9.     Deeds, titles, bills, invoices, and other indicators of ownership or occupancy of desktop computers, laptop computers, tablets, and other similar devices; documents reflecting names, addresses, and telephone numbers; bank records; all records or documents identifying the location of safety deposit boxes or other possible repositories for pornography; and any keys or other access devices associated with such depositories;

10.     If any safes or other locked containers are found on the premises, locksmiths may be used to open the safe or container either on the premises, or if reasonably necessary, any safe container may be moved off-premises to be opened.

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>21-cr-50658-2 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*